54 F.3d 624
 67 Fair Empl.Prac.Cas. (BNA) 1065, 131
Lab.Cas. P 58,054,
10 IER Cases 1098
 Rolland JONES, William Eichler, Kathy Smiley, Heber R.
Cantrell, John H. Barton, James A. Cole, Thelma Gordon,
Linda Duncan, David Lowther, Helen McAleese, David W. Davis,
Leroy Sturgeon, Scott Miller, Roger B. Englert, Jack B.
Hall, William W. Hempel, Dennis Allen, Albert D. Vincent,
Joseph Turner, Dorothy Lee, Plaintiffs-Appellants/Cross-Appellees,
v.
UNISYS CORPORATION, A Delaware corporation,
Defendant-Appellee/Cross-Appellant.
 Nos. 93-4173, 93-4177 and 93-4214.
 United States Court of Appeals,
Tenth Circuit.
 April 26, 1995.
 
 Troy K. Fitzgerald (Allen K. Young of Young & Kester, Springville, UT, and Jeril B. Wilson, Provo, UT, on the briefs), for plaintiffs-appellants/cross-appellees.
 James W. Stewart (Michael Patrick O'Brien and D. James Morgan, also of Jones, Waldo, Holbrook & McDonough, Salt Lake City, UT, with him, on the briefs), for defendant-appellee/cross-appellant.
 Before SEYMOUR, Chief Judge, LOGAN and EBEL, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 Plaintiffs[1] alleged that their employer, defendant Unisys Corporation, Inc. (Unisys) improperly discharged them in connection with a reduction in force, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Secs. 621-634. Plaintiffs also asserted a state law claim that Unisys breached their employment contract when it departed from a long-standing seniority policy in implementing the force reduction. The district court granted Unisys' motion for summary judgment on both claims. On appeal plaintiffs argue that the district court erred (1) in determining they produced insufficient admissible evidence upon which a trier of fact could find rebuttal of the Utah state law presumption of employment at will and creation of an implied contract, and (2) in concluding that age was not a determinative factor in Unisys' decision to discharge plaintiffs. Defendant Unisys cross-appeals, asserting that the district court abused its discretion in awarding Unisys, the prevailing party, only a small portion of its costs.
 
 
 2
 We review a grant of summary judgment de novo, applying the same standard as the district court. See Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 527 (10th Cir.1994). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We view the evidence and draw any inferences in the light most favorable to the party opposing summary judgment. MacDonald v. Eastern Wyoming Mental Health Center, 941 F.2d 1115, 1117 (10th Cir.1991). The opposing party, however, must identify sufficient evidence to require submission of the case to a jury. MacDonald, 941 F.2d at 1121-22. We affirm the district court's decision to grant summary judgment if the record contains any basis to do so. Swoboda v. Dubach, 992 F.2d 286, 291 (10th Cir.1993).
 
 
 3
 * Unisys was formed by a merger of the Burroughs and Sperry Corporations in 1986. It is a computer and computer products company which maintained commercial and defense divisions in Salt Lake City, Utah. Because of serious financial losses in the late 1980s and early 1990s it implemented drastic cost cutting measures including layoffs at its various facilities.[2] Unisys closed the Salt Lake distribution center (a part of its commercial division) in late 1991 and shifted its remaining work to San Jose, California.
 
 
 4
 Plaintiffs asserted that in laying them off Unisys breached an implied-in-fact employment contract term that provided for termination only for cause. They also allege that employees with more seniority had the right to bump less senior employees to survive a layoff or avoid a transfer. The district court found that plaintiffs failed to establish any issues of material facts remained on the employment contract claim and that plaintiffs had not rebutted the presumption under Utah law of employment at will.
 
 
 5
 In Utah "any employment contract which has no specified term of duration is an at-will relationship." Berube v. Fashion Centre, Ltd., 771 P.2d 1033, 1044 (Utah 1989). At-will employment may be terminated at any time by the employer or the employee. Brehany v. Nordstrom, Inc., 812 P.2d 49, 53 (Utah 1991). This presumption of at-will employment may be rebutted by an employee showing "that the parties expressly or impliedly intended a specified term or agreed to terminate the relationship for cause alone." Berube, 771 P.2d at 1044. The employee must establish the existence of an implied-in-fact contract provision. Johnson v. Morton Thiokol, Inc., 818 P.2d 997, 1001 (Utah 1991). The court looks for objective manifestations of the parties' intent when evaluating the factual issue whether they agreed to modify what would otherwise be an at-will relationship. Id.
 
 
 6
 Plaintiffs produced evidence that Unisys and its predecessors, Sperry and Burroughs, considered seniority in reduction in force decisions from the 1950s until sometime in the late 1980s. The seniority system allowed employees with more service to bump employees with less service. Plaintiffs produced evidence that when they were originally hired employee handbooks and other documents stated that seniority would be followed in layoff decisions. They pointed to numerous statements in employee handbooks that seniority was the determining factor under such circumstances and noted that during earlier force reductions Unisys followed a seniority policy.
 
 
 7
 Apparently sometime in 1988 Unisys decided to replace seniority-based layoffs with a skills-based system,[3] in which retention decisions accommodated the following factors in descending priority: (1) demonstrated performance, (2) skills mix, (3) length of experience, and (4) length of service as a tiebreaker. The skills-based system also eliminated bumping. Plaintiffs contend that this changed their employment contract without notice,[4] a claim that is relevant only if there was a contract which included the seniority policy permitting more senior employees to avoid layoffs.
 
 
 8
 The district court found that plaintiffs produced no evidence on which a jury could find the existence of an express or implied-in-fact employment contract and that their employment was terminable at will. In doing so the court relied in part on a statement in the Unisys Human Resources Policy and Procedural Manual that "[t]he policies and procedures in this manual supersede any and all prior policies and procedures of the Company, oral or written. They are subject to change, in whole or in part, at any time by Unisys and at its sole discretion." App. of Appellants & Cross-Appellees (hereafter App.) 13. The record also reveals numerous other at-will statements and contract disclaimers in job offer letters, pamphlets, policy statements posted on bulletin boards, application forms, and recent employee handbooks, as well as statements in handbooks and policy manuals that Unisys reserved the right to change policies at its discretion. See, e.g., III Supp.App. of Appellee (hereafter Supp.App.) 100770 (1987 pamphlet), 100789 (1987 employment application form), 100803 (1984 Sperry Business Ethics at DSD pamphlet), 100813 (1984 Sperry Business Ethics Guideline), 100814 (1985 Sperry Termination of Employment Report), 101025 (1985 Sperry Termination Guideline), 101037 (1986 Operating Regulations Salt Lake City), 101039 (1987 Unisys and You pamphlet), 101067 (1988 Operating Regulations Salt Lake City), 101071 (1989 Reduction in Force Procedure), 101075 (1989 Discipline/Discharge Procedure), 101195 (1992 Career Opportunity Program), 101200 (1990 Authorization to Return to Work Form).
 
 
 9
 The district court determined that because Unisys retained the discretion to change its policies at any time the seniority-based layoff policy could not be a contract term. Thus, Unisys' prior course of conduct created no binding obligation to continue that practice in the future. The district court determined that in light of the disclaimer an employee could not reasonably rely on the existence of an implied contract. We agree.
 
 
 10
 We believe the case is controlled by the decision in Johnson v. Morton Thiokol. There the Utah Supreme Court highlighted language in an employee handbook disclaiming any contractual liability and stating Thiokol's intent to maintain an at-will relationship with its employees:
 
 
 11
 The policies and procedures expressed in this book, as well as those in any other personnel materials which may be issued from time to time, do not create a binding contract or any other obligation or liability on the company. Your employment is for no set period and may be terminated without notice and at will at any time by you or the company. The company reserves the right to change these policies and procedures at any time for any reason.
 
 
 12
 Johnson, 818 P.2d at 1003. The Johnson court determined that based on this language an employee could only reasonably conclude that the employer intended to maintain the right to discharge an employee for any reason.[5] Thus, under Utah law, despite the historical policy and practice of following seniority in layoffs, a jury could not find that a Unisys employee would have reasonably believed that their employment was other than at will. Plaintiffs failed to establish any material issues of fact regarding the existence of an implied employment contract with Unisys. Summary judgment for Unisys was proper.
 
 II
 
 13
 We turn now to plaintiffs' assertion that the district court erred in granting Unisys summary judgment on the ADEA claim. An ADEA plaintiff must establish that age was "a determining factor" in the employer's challenged decision. EEOC v. Sperry Corp., 852 F.2d 503, 507 (10th Cir.1988). A plaintiff may attempt to meet that burden "by presenting direct or circumstantial evidence that age was a determining factor in his discharge," Lucas v. Dover Corp., 857 F.2d 1397, 1400 (10th Cir.1988) (quoting La Montagne v. American Convenience Prods., Inc., 750 F.2d 1405, 1409 (7th Cir.1984)). Individual disparate treatment claims often use the indirect method of proof developed in Title VII cases, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973), and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56, 101 S.Ct. 1089, 1093-95, 67 L.Ed.2d 207 (1981), that we have adapted for ADEA cases. See Cockrell v. Boise Cascade Corp., 781 F.2d 173, 177 (10th Cir.1986).
 
 
 14
 A plaintiff establishes a prima facie case of age discrimination by showing that he was (1) within the protected age group; (2) doing satisfactory work (qualified for the position); (3) discharged (or adversely affected by defendant's employment decision); and (4) replaced by a younger person. Branson v. Price River Coal Co., 853 F.2d 768, 770 (10th Cir.1988); EEOC v. Sperry, 852 F.2d 503, 507 (10th Cir.1988). In reduction in force cases, because a plaintiff is not always replaced with another employee, we modified the McDonnell Douglas burden-shifting scheme so that a plaintiff may demonstrate the fourth element by producing "evidence, circumstantial or direct, from which a fact-finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." Branson, 853 F.2d at 771 (quoting Williams v. General Motors Corp., 656 F.2d 120, 129 (5th Cir.1981)). The fourth element may also be shown by circumstantial evidence that a plaintiff was treated less favorably than younger employees. Rea v. Martin Marietta Corp., 29 F.3d 1450, 1454 (10th Cir.1994).
 
 
 15
 Once a plaintiff establishes a prima facie case the burden of production shifts to the defendant to show a "legitimate, nondiscriminatory reason" for the decision. EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1316 (10th Cir.1992) (quoting McDonnell Douglas Corp., 411 U.S. at 802, 93 S.Ct. at 1824). If the defendant offers evidence of a legitimate nondiscriminatory reason for its employment decision, "the presumption of discrimination established by the prima facie showing 'simply drops out of the picture.' " Ingels v. Thiokol Corp., 42 F.3d 616, 621 (10th Cir.1994) (quoting St. Mary's Honor Ctr. v. Hicks, --- U.S. ----, ----, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993)). The plaintiff must then offer evidence that age was a determining factor in the challenged decision by either showing that the defendant's proffered reasons were really a pretext for age discrimination or by producing direct evidence of age discrimination. Ingels, 42 F.3d at 621; see also Rea, 29 F.3d at 1455 (citing Burdine, 450 U.S. 248 at 256, 101 S.Ct. 1089 at 1095). At the summary judgment stage, if the plaintiff produces both a prima facie case and evidence supporting a finding that "defendant's alleged nondiscriminatory reasons for the employment decisions are pretextual, the case should go to the factfinder." Ingels, 42 F.3d at 622.
 
 
 16
 The district court found that plaintiffs failed to establish a prima facie case of age discrimination because they did not produce evidence from which a factfinder might reasonably conclude that Unisys made employment decisions with intent to discriminate on the basis of age. Alternatively, the district court found that plaintiffs failed to raise a genuine issue of material fact as to whether Unisys' proffered explanation was pretextual. We assume, for purposes of this opinion, that plaintiffs established a prima facie case of age discrimination.[6] Therefore, we proceed to the district court's determination that Unisys provided evidence of legitimate, nondiscriminatory reasons for the decisions.
 
 
 17
 The district court summarized the reasons for laying off plaintiffs: Unisys was losing billions of dollars, facing economic disaster, and had to implement drastic cost-cutting measures. The district court thus found that Unisys articulated a legitimate nondiscriminatory reason for the reduction in force. We agree. Although the district court did not specifically address the reasons Unisys offered for its decisions to lay off or deny transfers to specific plaintiffs, the record reveals that Unisys articulated legitimate nondiscriminatory reasons for these decisions.
 
 
 18
 Of the sixty-three employees at the distribution center, forty-nine were laid off, one voluntarily retired, eight were transferred, and four were retained by the residual shipping and receiving group.[7] Nineteen of the plaintiffs, all but Cole, were laid off from the Salt Lake distribution center. Unisys articulated legitimate nondiscriminatory reasons for retaining the four employees in the residual group.
 
 
 19
 Cole was laid off from the procurement group which was reduced from thirteen to five employees. Unisys produced evidence that his buying and contract negotiation skills and other qualifications did not meet the needs of the group as well as the five employees retained.
 
 
 20
 Many of the plaintiffs also asserted that decisions to transfer younger employees was evidence of age discrimination. However, only six plaintiffs applied for transfer;[8] thus we need address only their situations.
 
 
 21
 Plaintiff Duncan requested a transfer to the defense division in Salt Lake only, but did not demonstrate she was qualified for the position to which she sought to be transferred. She made out no prima facie case of age discrimination on the adverse transfer decision. Cantrell did not identify specific jobs to which he claims he should have been transferred nor present evidence he was qualified for such jobs. Thus, we need not consider whether Unisys presented legitimate reasons for not transferring these plaintiffs because the burden of production never shifted to Unisys as to these individuals.
 
 
 22
 Plaintiffs Hall, Jones, Lowther, and Sturgeon each asserted that their transfers to San Jose engineer positions were denied because of age discrimination. Assuming plaintiffs produced evidence that younger employees were given those jobs for which plaintiffs arguably were qualified, Unisys articulated legitimate nondiscriminatory reasons for granting those transfers. See VII Supp.App. 102294-2334 (decisionmaker Rookhuyzen testified in detail how he chose the employees for these positions, based on their qualifications, experience, and interviews with them); id. at 102537-59 (decisionmaker Wheeler testified why he hired the engineers for the San Jose positions, and why he rejected others). Because Unisys produced evidence of legitimate reasons for the challenged decisions, plaintiffs then had the burden to produce direct evidence of age discrimination or to show that the reasons given were a pretext for age discrimination.
 
 
 23
 Plaintiffs utterly failed to show direct evidence of age discrimination: they offer the "telling" statistic that "historically, 33.3% of the employees within the protected class were terminated in any given reduction in force. In the 1991 reduction in force which affected the plaintiffs, 62.5% of the employees in the protected class were terminated." Brief of the Appellants & Cross-Appellees at 9. However, as Unisys pointed out, in the 1991 layoffs a slightly higher percentage of employees outside the protected age group were terminated compared with those in the protected group. Indeed, the percentage of employees in the protected age group before and after the reduction in force was almost the same--about sixty-nine percent. Statistics taken in isolation are generally not probative of age discrimination, see Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526 (10th Cir.1994), and the statistics here do not support a finding of intent to discriminate.
 
 
 24
 The only other purported evidence of age discrimination was a double hearsay comment by a Unisys employee responsible for job posting, that "its [sic] about time we unloaded some of this old driftwood." App. 122. This stray remark by someone not in a decision-making position does not establish intent to discriminate. See Cone, 14 F.3d at 531. Further, plaintiffs admitted they had not experienced negative treatment or derogatory remarks based on age before the challenged decisions.
 
 
 25
 Because plaintiffs failed to produce direct evidence of intent to discriminate, we have carefully reviewed the record for rebuttal evidence on which a finder of fact could conclude that Unisys' explanations for the challenged decisions were actually a pretext for age discrimination. "A plaintiff demonstrates pretext by showing either 'that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence.' " Rea, 29 F.3d 1450, 1455 (quoting Burdine, 450 U.S. at 256, 101 S.Ct. at 1095). Plaintiffs need not disprove defendant's reasons or demonstrate that age was the only factor motivating the decision, but they "must show that age actually played a role in the [employer's] decisionmaking process and had a determinative influence" on the decision. Rea, 29 F.3d at 1455. In opposing summary judgment a plaintiff must be given an opportunity to show by competent evidence that the presumably valid reasons for the layoffs were really a pretext for a discriminatory decision. Id. at 1455. In evaluating plaintiffs' evidence, we must determine whether the evidence interpreted in the light most favorable to the plaintiffs "could persuade a reasonable jury that the employer had discriminated against the plaintiff[s]." Hooks v. Diamond Crystal Specialty Foods, Inc., 997 F.2d 793, 798 (10th Cir.1993). If no material facts are in dispute concerning the pretextuality of defendants' actions, summary judgment is appropriate. Id.
 
 
 26
 As the district court pointed out, plaintiffs conceded that "Unisys was facing an economic disaster," App. 18, and that economic problems were "an adequate reason to declare a reduction in force." Id. Thus, plaintiffs do not appear to argue that the reduction in force itself was a pretext for discrimination. Rather, plaintiffs argued that Unisys' failure to use the historical seniority-based layoff approach showed an intent to discriminate. The district court correctly found that a change of policy from seniority-based to skills-based evaluations does not establish pretext. Failure to base layoffs on seniority is not necessarily age-related. See Williams, 656 F.2d at 130 n. 17. The district court also stated that "Unisys had a written policy of skills-based layoffs which plaintiffs concede is age-neutral." App. 19.
 
 
 27
 Plaintiffs also alleged, however, that the policy of skills-based layoffs was not consistently followed, and that the transfer decisions were improperly based on age. We have reviewed the record to determine whether plaintiffs produced any evidence that the reasons given for decisions to lay off individual plaintiffs were pretextual. Plaintiffs failed to counter Unisys' evidence supporting the legitimacy of the reasons supporting the challenged layoffs. Thus, even assuming plaintiffs established their prima facie case, they failed to demonstrate that a genuine issue of material fact remained whether age was a determining factor in the layoff and transfer decisions. Summary judgment for Unisys on the ADEA claims was appropriate.
 
 III
 
 28
 We next address Unisys' assertion on its cross-appeal that the district court abused its discretion in denying Unisys particular costs as the prevailing party. The general costs statute authorizes recovery by the prevailing party of certain costs, including court reporter fees for transcripts and fees for copies of papers "necessarily obtained for use in the case." 28 U.S.C. Sec. 1920(2), (4). These costs are to be allowed to the prevailing party "unless the court otherwise orders." Fed.R.Civ.P. 54(d)(1). Thus, the district court has discretion in this matter, and we review denial of costs for abuse of discretion. See Hall v. State Farm Fire & Cas. Co., 937 F.2d 210, 216 (5th Cir.1991).
 
 
 29
 Unisys asserts that the district court should have awarded the costs it incurred for the court reporter, for the original and one copy of depositions, and for copies of exhibits, tabs and a disk for each deposition it took, and for one copy of all depositions taken by plaintiffs. Unisys sought costs for "internal copying" of documents by its counsel produced for discovery and others not used, for "external copying" in aid of exhibits it used to support its summary judgment motions, and twenty cents per copy for three copies of each pleading. These altogether totalled $41,448.01. In addition Unisys sought $3,475.00 for expert witness fees and expenses, and $8,449.82 for charges it incurred for computer-assisted legal research.
 
 
 30
 Reciting that it had reviewed the relevant memoranda, in a short order the district court awarded only $1,263.83, representing "the cost of making copies of all pleadings and other documents filed with the court and tendered to plaintiffs, minus the amounts requested by defendant for internal convenience copies." Supp.App. 102852-53. Although we would have preferred more explanation, the district court apparently found that most of the copying costs were not "reasonably necessary." We do not believe the presumption favoring award of statutorily authorized costs, see U.S. Indus. Inc. v. Touche Ross & Co., 854 F.2d 1223, 1245 (10th Cir.1988), mandates that the district court abused its discretion in denying the copying costs it disallowed.
 
 
 31
 Expert witness fees for witnesses that do not appear in court are not an allowable cost under 28 U.S.C. Sec. 1920. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987) (taxation of expert fees not proper under 28 U.S.C. Secs. 1821 or 1920 absent express statutory or contractual authorization); James v. Sears, Roebuck and Co., 21 F.3d 989, 995-96 (10th Cir.1994) (denying expert witness fees in ADEA case despite 1991 amendments to Civil Rights Act). We note that costs for computer legal research are not statutorily authorized, and the district court should "sparingly exercise its discretion with regard to expenses not specifically allowed by statute." U.S. Indus., 854 F.2d at 1246. We hold that the district court did not abuse its discretion in its decision on costs.
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 The plaintiffs, all former employees of defendant Unisys Corporation, Inc., are Rolland Jones, William Eichler, Kathy Smiley, Heber R. Cantrell, John H. Barton, James A. Cole, Thelma Gordon, Linda Duncan, David Lowther, Helen McAleese, David W. Davis, Leroy Sturgeon, Scott Miller, Roger B. Englert, Jack B. Hall, William W. Hempel, Dennis Allen, Albert D. Vincent, Joseph Turner, and Dorothy Lee
 
 
 [2]
 Overall, between 1987 and 1993, Unisys reduced its work force worldwide from approximately 100,000 to 55,000 employees. The Utah commercial division, which included the Salt Lake City distribution center, was reduced from 1,376 employees to 716 employees between 1987 and 1992
 
 
 [3]
 Although plaintiffs assert Unisys never fully implemented the skills-based system, plaintiffs' contract claim does not rely on that factual distinction
 
 
 [4]
 Plaintiffs also point to Unisys' management admissions that employees were not terminated under the at-will language even after the alleged change
 
 
 [5]
 The Utah Court in Johnson stopped short of holding that a clear and conspicuous disclaimer as a matter of law prevents employee manuals or other materials from creating implied-in-fact contract terms. Rather, the court held that the handbook would have to be read as a whole and therefore the procedures for terminating employees stated in the handbook would have to be read in light of the disclaimer that reserved the right to discharge for any reason. 818 P.2d at 1003
 
 
 [6]
 The district court found that plaintiffs failed to produce evidence that they were treated less favorably than younger employees. In doing so, the court rejected the notion that the ADEA required Unisys to allow plaintiffs to bump less senior employees or allow transfers under a previously followed seniority policy. See Williams, 656 F.2d at 130 n. 17 (employers not required to treat older employees more favorably). The district court found that "local jobs which were not eliminated by the layoff were already filled by current Unisys employees" and further found that there was no contractual responsibility to allow plaintiffs to bump other employees. We agree that refusal to allow plaintiffs to bump less senior employees was not in itself evidence of an ADEA violation. If a job is eliminated, the organization has no duty to allow one employee to bump a less senior, and possibly younger employee, from a different position
 Regarding transfers, the district court appeared to find no prima facie case because 75 percent of employees transferred to San Jose were within the protected age class. We believe the issue is somewhat more complicated. Although these statistics might negate a claim of disparate impact age discrimination, they do not conclusively rule out an inference of age discrimination as to an individual plaintiff. For example, if a qualified 60-year-old was denied a transfer given instead to a less qualified 35-year-old employee, that would establish a prima facie case.
 Further, the district court did not specifically address whether plaintiffs individually produced evidence that they were treated less favorably than younger employees; rather, it relied on its determination that the failure to use the historical seniority policy was not evidence of age discrimination. Some of the plaintiffs produced evidence on which a factfinder could conclude that they were treated less favorably than younger employees. For these reasons, we decline to affirm on the basis that plaintiffs failed to establish a prima facie case.
 
 
 [7]
 One employee was in the miscellaneous category of "Medical Leave, Quit, or Deceased." III Supp.App. 100777
 
 
 [8]
 Plaintiffs who did not request transfer included Eichler, Smiley, Barton, Cole, Gordon, McAleese, Davis, Miller, Hempel, Allen, Vincent, Turner, and Lee. These plaintiffs may not challenge as discriminatory the decision to fill positions they did not seek. Plaintiff Englert did not apply for transfer but turned down an offer of employment in San Jose